UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TASHA C., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 22 C 816 <br><br> Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tasha C. seeks review of the final decision of the Acting Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB"). Tasha requests reversal of the ALJ's decision and remand [15], and the Acting Commissioner moves for summary judgment affirming the decision [21]. For the following reasons, the Court reverses the ALJ's decision and remands this case for further proceedings consistent with this opinion.

## BACKGROUND

Tasha suffered a workplace injury in March 2009, which led to Tasha undergoing rotator cuff surgery in October 2009 and anterior spinal discectomy and fusion surgery in May 2011. In July 2012, Tasha left her job as a machine and line operator due to worsening back pain. Tasha alleges disability as of July 10, 2012 due to a tear of medical cartilage or meniscus of knee, right shoulder rotator cup, spinal fusion causing back spasms, and arthritis in both knees and back. On her alleged onset date, Tasha was 35 years old. Tasha last met the insured status requirements on March 31, 2019. As a result, July 10, 2012 to March 31, 2019 is the relevant time period at issue.

Tasha's claims were initially denied on December 15, 2014, and upon reconsideration on April 8, 2015. (R. 93-101, 103-113). Upon Tasha's written request for a hearing, she appeared

before ALJ Diane S. Davis on two occasions. At the first hearing, on September 21, 2016, the ALJ continued the hearing because Tasha was waiting on medical records from the 2015 to 2016 time period. *Id.* at 77-84. There, Dr. Ashok G. Jilhewar, who appeared as a medical expert, testified that he could not state his opinion without reviewing the missing records. *Id.* at 82-83. At the second hearing, on February 17, 2017, the ALJ heard testimony from Tasha and the vocational expert ("VE"), Robert Burkins. *Id.* at 33-76. However, no medical expert appeared or presented testimony at the second hearing.

On June 28, 2017, the ALJ issued a decision denying Tasha's application for disability benefits. (R. 2026-2035). After the Appeals Council denied Tasha's request for review, *id* at 1-6. Tasha appealed the decision to the United States District Court for the Northern District of Illinois. This Court then issued a written decision holding that the ALJ failed to properly weigh the medical opinions, mischaracterized the record, and failed to adequately develop the medical evidence. *See Tasha C. v. Saul*, 2019 WL 6877190 (N.D. Ill. Dec. 17, 2019). On remand, the Court ordered the ALJ to complete the following:

> (1) determine whether any of the physicians constitute "Treating source[s]" under 20 C.F.R. § 404.1527(a)(2); (2) for each treating source, explain what weight, if any, the ALJ gives to the physician's opinion; (3) if the ALJ gives less than controlling weight to a treating physician's opinion, the ALJ must then apply the regulatory checklist factors; and (4) either recontact Tasha's treating physicians to obtain a physical RFC assessment or call a medical expert.

*Id*. at *12. The Court also noted that Tasha's medical record was immense and detailed Tasha undergoing surgery, physical therapy, and more in response to a wide array of ailments. *Id*. at *1. Now, nearly three years later, the record includes an additional 5,043 pages.[1]

Pursuant to the remand from this Court, on September 9, 2021 a new ALJ, Deborah Ellis, held a telephone hearing. (R. 1993-2022). Tasha and her attorney attended the hearing, and VE

---

[1] The Acting Commissioner provided this number. *See* Doc. 21 at 14.

2

Shawna McChullah testified—no medical expert was present. *Id*. On October 20, 2021, the ALJ found Tasha not disabled. *Id*. at 1965-1980. The opinion followed the required five-step process. 20 C.F.R. § 404.1520. The ALJ concluded that Tasha had the following severe impairments: lumbar spine disorder, post-laminectomy syndrome with a history of lumbar fusion surgery;[2] major joint disorder, right shoulder and left knee, both status post-surgical repair. *Id*. at 1968. The ALJ concluded that Tasha does not have an impairment or combination of impairments that results in any functional limitation(s) lasting at least twelve continuous months or that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id*. at 1969. The ALJ then determined that Tasha had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations:

> occasional climbing, stooping, kneeling, crouching, and crawling; frequent reaching in all directions with the dominant right upper extremity; avoiding concentrated exposure to unprotected heights and to uneven ground or flooring; if must sit longer than one hour at a time, will need to stand and move around at the work station for no more than 2 or 3 minutes at a time during hours wherein there is no regular break scheduled. Occasional use of lower extremities to operate foot controls. May need to use a cane to ambulate.

*Id*. The ALJ concluded that Tasha is unable to perform her past relevant work, but there were jobs that existed in significant numbers in the national economy that Tasha could perform, including document preparer, printed circuit board assembly screener, and addresser.[3] *Id*. at 1978-79. As a

---

[2] "Post-laminectomy syndrome is a condition where the patient suffers from persistent pain in the back following surgery to the back. Post-laminectomy syndrome is also called failed back surgery syndrome." *Jeffrey S. v. Comm'r of Soc. Sec.*, 2018 WL 4539069, at *5 n.4 (S.D. Ill. Sept. 21, 2018) (internal citations and quotations omitted).

[3] As the Seventh Circuit and many courts nationwide have acknowledged, the descriptions and numbers for the jobs the vocational expert and the ALJ cited are often suspect. *See Alaura v. Colvin*, 797 F.3d 503, 507 (7th Cir. 2015) ("We have recently expressed concern with the source and validity of the statistics that vocational experts trot out in social security disability hearings, as have other courts, and commentators") (citations omitted). With respect to "addresser," courts have found this job "resoundingly obsolete." *Yanke v. Kijakazi*, 2021 WL 4441188, at *4 (E.D. Wis. Sept. 28, 2021); *see also N.B. v. Saul*, 2021 WL 1947526, at *11 (N.D. Cal. May 14, 2021) ("Following this district's precedent and the Social Security Administration, the addresser job is obsolete."). Indeed, the court in *Analia D. v. Berryhill*, 2019 WL

result, the ALJ found Tasha not disabled. *Id*. at 1980.

## DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (internal quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such

---

856854, at *2 (C.D. Cal. Feb. 6, 2019) explained that "[s]ubstantial evidence and common sense do not – and reasonably could not – support the agency's conclusion that thousands of people work every day typing envelopes for a living." Regarding "document preparer," courts have held that the job is "antiquated, and it is doubtful that [it] exist[s] in significant numbers in the national economy." *Wolvin v. Saul*, 2019 WL 4880854, at *6 (E.D. Wis. Oct. 3, 2019); *see also Corey S. v. Comm'r of Soc. Sec.*, 2021 WL 2935917, at *11 (N.D.N.Y. July 13, 2021) ("document preparer, is increasingly recognized as obsolete."). This Court shares those concerns.

4

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (internal quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Tasha argues that the ALJ's decision should be reversed and remanded for three reasons. First, she contends that the ALJ mischaracterized the record and drew impermissible inferences about the extent of her injuries. Second, Tasha asserts that the ALJ failed to properly factor in the effects of her fibromyalgia on her ability to sustain the exertional and non-exertional requirements of full-time work. Third, Tasha claims that the ALJ failed to properly develop the medical evidence. The Court finds the ALJ's evaluation of the medical opinion evidence violated the law of the case doctrine and was not supported by "more than a mere scintilla" of evidence. *Biestek*, 139 S.Ct. at 1154. Because this issue warrants remand, the Court does not reach Tasha's remaining argument.

1. **Noncompliance with the Law of the Case Doctrine**

To start, ALJ Ellis failed to follow the instructions from this Court's prior opinion.[4] When the Court enters judgments and remands cases back to the Social Security Administration ("Administration"), it fully and reasonably expects the Administration will comply with the Court's orders. As the court in *Wallace v. Colvin*, 193 F. Supp. 3d 939 (N.D. Ill. 2016) explained,

---

[4] Although Tasha does not identify the law of the case doctrine by name, she sufficiently invokes the doctrine with her argument that the ALJ did not recontact any of the numerous treatment specialists or seek testimony from a medical expert as required by this Court. *See* Doc. 15 at 15.

5

there are at least three reasons for this expectation. First, court orders are binding judicial decisions that must be followed. *See, e.g.*, *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293, (1947) ("[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings."). Second, according to the Administration's own operating procedures, court remand orders are transmitted to and disseminated throughout the relevant portions of the Administration. *Wallace*, 193 F. Supp. 3d at 941. Third, the "law of the case" doctrine requires the ALJ to comply with the Court's instructions on remand. *Id*.

Under the law of the case doctrine, to the extent that the Court has decided an issue "either expressly or by necessary implication," the "decision [is] binding upon all subsequent proceedings in the same case." *Surprise v. Saul*, 968 F.3d 658, 663 (7th Cir. 2020) (internal citations and quotations omitted). The doctrine "requires the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart." *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998). Whether an ALJ violated the law of the case is best determined "by carefully considering the scope of the district court's remand order." *Key v. Sullivan*, 925 F.2d 1056, 1061 (7th Cir. 1991). Ultimately, "[d]eviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989); *see also Alesia v. Berryhill*, 2018 WL 3920534, at *8 (N.D. Ill. Aug. 16, 2018) ("The ALJ's failure to adhere to the law of the case, as set forth in *Alesia II*, requires remand."); *Daniels v. Colvin*, 2016 WL 7116582, at *12 (N.D. Ill. Dec. 7, 2016) ("The ALJ's logic in 2014 closely mirrors the same faulty credibility logic as she used in her 2012 decision ... On its face, this is a violation of the law of the case doctrine, and as such is grounds for remand.").

Here, ALJ Ellis was fully aware of this Court's 15-page order previously entered in this case. R. 2060-82; *see also* Doc. 21 at 13 ("Here, the ALJ was aware of the concerns about the prior ALJ's assessment of the opinion evidence articulated by the court in its remand order."). Indeed, the ALJ stated, "[p]ursuant to the District Court remand order, [the] Appeals Council has directed the undersigned to offer the claimant a new hearing and issue a new decision that addresses the prior decision's flaws in evaluating the medical opinion evidence and developing the record, as identified by the Court." *Id*. at 1965 (*citing* R. 2060-82). In relevant part, this Court directed the ALJ on remand to either recontact Tasha's treating physicians to obtain a physical RFC assessment or call a medical expert. *Tasha C. v. Saul*, 2019 WL 6877190 at *12. Consequently, this Court's order was binding on ALJ Ellis, and Tasha had a right to expect that she would comply with the requirements. Yet, the ALJ chose to ignore this Court's order. There is no evidence that the ALJ recontacted Tasha's treating physicians—the physicians whose opinions the ALJ on remand once again assigned little or no weight. *See* R. 1976-78. Likewise, ALJ Ellis did not elicit testimony from a medical expert at Tasha's third hearing. *See id*. at 1965-1980. In response, the Acting Commissioner provides no compelling reason for the ALJ's decision to depart from this Court's order. Rather, ALJ Ellis evaluated the same medical record before the initial ALJ with an additional 5,000 pages of medical documents without an updated medical opinion or expert to craft her RFC and reach her disability finding. Accordingly, the Courts finds that ALJ Ellis erred by not complying with the remand order, so remand is necessary. *See Sullivan*, 490 U.S. at 886.

2. **Failure to Develop the Medical Record**

Next, Tasha asserts that ALJ Ellis followed in her predecessor's footsteps, playing doctor rather than fulfilling her duty to build a fair and complete record. *See* Doc. 15 at 13-15. Specifically, Tasha suggests that ALJ Ellis acknowledged that the various medical opinions lacked

detail or clarity and, as a result, filled the gaps herself. *Id*. With no medical expert testimony and no timely physical RFC evaluation by a doctor, the ALJ was left alone to piece together nearly ten years of medical records, spanning over 7,000 pages in the administrative record for Tasha's alleged impairments. The Court finds that ALJ Ellis erred for at least two reasons.

First, ALJ Ellis relied on old medical opinion evidence rather than properly developing the medical record. "It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000) (citation omitted). The ALJ has a duty to develop the medical record by requesting evidence from the claimant's medical sources. 20 C.F.R. § 404.1512(b). If the ALJ is unable to properly evaluate the medical evidence in the record, the regulations provide options for the ALJ to pursue, including requesting additional records, recontacting the treating physician, and ordering a consultative examination. *See* 20 C.F.R. § 404.1520b(b). An ALJ's decision to call a medical expert to testify is discretionary, *see* 20 C.F.R. § 404.1513a(b)(2), and the obtaining of a medical expert is only required "when the evidence received is inadequate to determine whether the claimant is disabled." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Courts in this Circuit have held the ALJ was required to obtain the testimony of a medical expert after finding that the evidence was inadequate with respect to some aspect of the claimant's disability. *See*, e.g.*, Patricia H. v. Berryhill*, 2019 WL 1098922, at *3 (N.D. Ill. Mar. 8, 2019) (explaining ALJ's assumptions were "another reason why a medical expert is needed on remand."); *Young v. Berryhill*, 2018 WL 4300489, at *2 (N.D. Ill. Sept. 10, 2018) (On remand, a medical expert should be called to address these [questions regarding plaintiff's alcohol and drug use.]"); *Hurlbut v. Colvin*, 2017 WL 497774, at *3 (N.D. Ill. Feb. 7, 2017) (remanding so that a medical expert could be called to answer several questions about the medical treatment at issue).

Here, ALJ Ellis assigned little to no weight (albeit with more analysis pursuant to the regulatory factors) to every relevant medical opinion. Beginning with the state agency medical consultants at the initial and reconsideration levels, the ALJ assigned their opinions little weight. (R. 1976). The ALJ explained that their opinions were reasonably well supported and consistent with the record, but the weight of subsequent medical evidence suggested greater limitations were warranted. *Id*. The state agency medical opinions at the initial and reconsideration levels were signed in 2014 and 2015. *Id*. at 101, 113. However, the state agency opinions did not include subsequent medical records through 2016. Those same opinions were rendered six to seven years before the September 2021 hearing. Although the ALJ relied on that fact to assign their opinions little weight, she did not request an updated consultative examination—a solution explicitly described in the regulations. *See* 20 C.F.R. § 404.1520b(b)(2)(iii); *see also Patrick S. v. Kijakazi*, 2022 WL 6257804, at *3 (S.D. Ind. Apr. 26, 2022) (finding "the ALJ was obligated to seek additional medical opinion evidence"). Even more problematic at this juncture is that these opinions were extremely remote in time by the most recent hearing date. *See, e.g.*, *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("[T]he ALJ would be hard-pressed to justify casting aside [the treating doctor's] opinion in favor of these earlier state-agency opinions ... [which] were two years old [by the time the ALJ held a hearing]."); *Coppage v. Colvin*, 2015 WL 1243321, at *12 (N.D. Ind. Mar. 17, 2015) ("the significant weight the ALJ gave to the consultative reviewers' opinions is suspect in light of the time that elapsed between their June and July 2011 opinions and the August 2012 hearing given the intervening medical records, the subsequent treating physician opinions, and Plaintiff's testimony"); *Hudnall v. Comm'r of Soc. Sec.*, 2017 WL 3432317, at *12 (N.D. Ind. Aug. 9, 2017) (remanding in part because "the state agency doctors' opinions were rendered six years before the July 2014 hearing"). Unlike cases with a one-to-two-year gap

9

between the state agency opinions and new medical evidence, here, there was a gap of six to seven years. As such, to the extent that ALJ Ellis relied on the state agency medical opinions to form her RFC, the ALJ's decision was not supported by "more than a mere scintilla of evidence."

Turning to the treating sources, ALJ Ellis reviewed the original treating sources and new medical opinions outside the relevant period. The ALJ concluded that because Dr. Joshi's opinion was a legal question reserved to the Commissioner, it was "not entitled to any special weight." (R. 1976). Then, the ALJ assigned both of Dr. Imlach's opinions little weight. *Id*. at 1976-78. Concerning the first, the ALJ explained that it was "not clear if this is the doctor's medical opinion or a statement of the claimant's subjective reports," and it was offered over six months after the relevant period. *Id*. at 1976-77. For the second, the opinion was inconsistent with the record and predated the alleged onset date and a variety of impairments. *Id*. at 1978. Next, the ALJ assigned Dr. Chandler's letter no weight because it was months after the date last insured, "utterly unsupported other than a reference to an 'orthopedic condition[,]' and is a conclusory statement on the ultimate question on disability." *Id*. at 1977. In addition, the ALJ assigned Dr. McDermot's letter little weight because it was after the date last insured, Tasha did not see the doctor before that date, and the doctor relied on her subjective complaints. *Id*. With respect to Dr. Piska, the ALJ concluded that the opinion had no probative value because it was prior to the alleged onset date and did not appear to be an opinion as to claimant's RFC. *Id*. Regarding Dr. Hall's progress notes, the ALJ assigned them no weight because it was unclear if the notes represented a medical opinion, or a statement of what Tasha was already doing, and the notes did not include an opinion on her RFC. *Id*. Further, the ALJ assigned Dr. Sweeny's assessment little weight because it was "poorly supported and far too vague to inform a [RFC] finding[,]" not consistent with the record, and offered less than a month after the alleged onset date. *Id*. at 1977-78.

In this case, ALJ Ellis found that every medical opinion she evaluated lacked vital information and deemed them insufficient. ALJ Ellis concluded that the original opinions considered by the first ALJ suffered from the same problems that the first ALJ recognized in her 2017 decision. In particular, the ALJ determined the opinions included findings reserved for the Commissioner, predated the alleged onset date, were inconsistent with the record, were unclear, and did not include an opinion on Tasha's RFC. Regarding the two new opinions from Dr. Chandler and Dr. Imlach, the ALJ found that they were based on information from months after the date last insured and were unclear, unsupported, and conclusory. As the Acting Commissioner points out, ALJ Ellis took great care to articulate her reasons for discounting every medical opinion. *See* Doc. 21 at 8-12. Under these circumstances, the medical opinions suffered from the same flaws that the original ALJ and this Court previously identified and discussed. *See Tasha C.*, 2019 WL 6877190, at *9 ("In reality, none of Tasha's treating physicians seemed to be assessing Tasha's overall ability to work (or what restrictions might be required if she returned to work) when considering her various impairments. Nor did any of Tasha's treating physicians complete a physical RFC questionnaire.").

Indeed, the reasons the ALJ identified for discounting the medical opinions in the record are reasons that the Seventh Circuit has acknowledged make relying on the medical opinions problematic. For example, in *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996), the Seventh Circuit held that "[g]iven that Dr. Lloyd failed to venture an opinion as to the extent of [claimant's] limitations or as to his residual capabilities, the evidentiary usefulness of his findings is slight, at best." *See also Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016) ("A treating doctor's opinion may be properly discounted, however, if it is based upon the claimant's subjective complaints rather than objective medical evidence."). Likewise, here, no medical opinion in the record

11

includes an opinion regarding Tasha's limitations as to her RFC.

The question then is what did ALJ Ellis actually rely on to craft her RFC? Although ALJ Ellis stated that "there is sufficient evidence in the record to assess the claimant's maximum residual functional capacity[,]" the Court cannot ascertain what evidence the ALJ relied on other than her own lay review because she found every medical opinion in the record flawed. *See* (R. 1965). Without this explanation, the Court cannot trace the ALJ's reasoning in reaching the RFC, and this constitutes another reason warranting remand. Given that nearly ten years have passed since many of Tasha's original treating physicians provided their opinions, the ALJ on remand must request an updated state agency medical opinion or call a medical expert. At this point, recontacting old physicians, which the Court originally suggested as an alternative, is no longer sufficient.

Second, ALJ Ellis evaluated an additional 5,000 pages of medical records submitted on remand that no persuasive medical opinion evaluated. While the existence of extra medical records does not necessarily require an expert opinion, the question is "whether the new information changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and evaluating himself the significance of the subsequent report[.]" *Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021) (cleaned up); *see also Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding after ALJ failed to submit new MRI to medical scrutiny). In some instances, courts have remanded the decisions of ALJs who interpret medical evidence without the benefit of a medical expert. *See, e.g., Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) ("[T]he ALJ seems to have succumbed to the

temptation to play doctor ... Under the circumstances, the ALJ should have summoned an expert to provide an informed basis for determining whether [claimant] is disabled."); *Potega v. Berryhill*, 2017 WL 2461549, at *6 (N.D. Ill. June 7, 2017) (requiring the ALJ to call a medical expert on remand where ALJ played doctor to interpret claimant's fibromyalgia treatment records).

Here, instead of providing the updated record to an expert for review, ALJ Ellis wrote off the new records as "duplicative or relating to visits or findings outside of the period at issue." (R. 1965). Likewise, the Acting Commissioner agreed that the "vast majority of those pages do not address the adjudicated period. . .and there is no value in submitting the record to additional medical scrutiny" *See* Doc. 21 at 14. This conclusion without more is insufficient. Neither the ALJ nor the Acting Commissioner has provided the Court with specific numbers—how many of the new records are duplicative? How many relate to documents outside the period at issue? More importantly, how many are inside the relevant period and not duplicative of records already reviewed for a medical opinion? From this Court's review, there appears to be records that no medical opinion considered and that fall within the relevant time period. Indeed, a comparison between the original record before the 2017 ALJ hearing decision and the 2019 ALJ decision reveals potentially significant and new developments in Tasha's medical history. While the Court does not presume to interpret those findings or reweigh the medical evidence, the new record, which no medical expert or state agency examiner has reviewed, includes thousands of additional pages that were not considered. *See Perz v. Kijakazi*, 2022 WL 354694, at *2 (N.D. Ind. Feb. 7, 2022) (remanding in part where based on plaintiff's calculations "863 pages, or more than eighty-nine percent of the medical record[,] was unavailable to [the agency consultants].").

For example, Dr. Hall's progress notes from March 6, 2017 were included in the new records and describe Tasha's discomfort walking, bending, and standing; difficulty ambulating up

13

and down stairs; and limited range of motion and pain in her left knee. *See* (R. 2275-76). In addition, the new evidence includes outpatient hospital records from June 2018, which point out Tasha's history of headaches, recent face numbness, and physical therapy "for her neck in the hopes that helps her headaches[.]" *Id*. at 2290-91. Further, the new records include Tasha's outpatient and inpatient rehabilitation records, numerous office treatment records, and emergency department records within the relevant period. *See, e.g.*, *id* at 2292-2387 (Advocate Trinity Hospital records, dated 07/02/2018 to 02/11/2020); *id*. at 2388-2436 (Dr. Chandler's records); *id*. at 2437-84 (Franciscan Health Emergency Department Records, dated 10/16/2016 to 12/13/2019). As the court in *Charita W. v. Berryhill*, 2019 WL 2524096, at *4 (N.D. Ill. June 18, 2019) explained, "[i]t would have been relatively easy for the ALJ to ask the medical expert to review thousands of pages of Claimant's medical records produced after the hearing, and there is no good reason given by the Commissioner or any other reason apparent in the record for the ALJ's failure to take that necessary step." Ultimately, ALJ Ellis unilaterally interpreted Tasha's entire medical record without any input from a medical expert and interpreted the significance of almost all of Tasha's medical records entirely on her own. Critically, though, ALJs must rely on medical experts to interpret medical evidence. *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018). The opposite occurred here, leading the ALJ to play doctor—"a clear no-no," as the Seventh Circuit has routinely admonished. *Goins*, 764 F.3d at 680.

      In sum, one of the errors this Court identified in its previous decision has not been corrected, and the Court remains unable to trace the ALJ's logic from the medical evidence to her conclusions about Tasha's RFC. Moreover, the ALJ's decision not to either recontact Tasha's treating physicians to obtain a physical RFC assessment or call a medical expert violated the law of the case doctrine. Accordingly, this case must be remanded for further consideration. On

remand, the ALJ is directed to request an updated state agency medical opinion or call a medical expert. After doing so, the ALJ must reconsider the decision in light of the expanded record.

## CONCLUSION

For these reasons, Plaintiff's request for reversal and remand [15] is granted and the Acting Commissioner's motion for summary judgment [21] is denied. The ALJ's decision is reversed, and the case is remanded to the agency for further proceedings consistent with this Opinion.

**SO ORDERED.**

Dated: May 26, 2023

_____
Sunil R. Harjani
United States Magistrate Judge